IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PAM TOUCHARD                                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 1:21-cv-168-TBM-RPM

GEORGE COUNTY MISSISSIPPI SCHOOL DISTRICT                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

Pam Touchard has sued the George County School District for First Amendment retaliation after the School District allegedly refused to hire Touchard. This dispute first began when Touchard served as the Superintendent of the School District. While serving in that role, she allegedly uncovered a cheating scheme that the George County School Board desired to keep under wraps. Touchard reported the scheme to the Mississippi Department of Education, and she claims to have received backlash from the School Board for doing so.

Around this time, the Mississippi Legislature abolished the election process for school superintendents in Mississippi. Instead, superintendents had to be appointed by the local school board. After this legal change, Touchard applied for employment with the School District as a teacher. But the School District refused to hire her on "any basis." Touchard filed this suit, and the School District moves to dismiss because her speech—the reporting of a cheating scheme—was allegedly made pursuant to her official duties in her prior role as Superintendent. Thus, the School District argues that since public employees have no First Amendment protection for speech made pursuant to their official duties, then Touchard's speech has no protection. But Touchard's speech was made while she was an *elected* official, not an *employee* of the School District. This distinction requires the School District's motion to be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pam Touchard was the Superintendent of Schools in George County, Mississippi, from January 1, 2016, until December 31, 2019. As Superintendent, Touchard was the highest official in the School District tasked with "[administering] the schools within [her] district and [] [implementing] the decisions of the school board." MISS. CODE. ANN. § 37-9-14(1). In 2016, the Mississippi Legislature approved the appointment of superintendents by local school boards rather than election making Touchard the last elected Superintendent of the School District. [18], pg. 2. Prior to her election as Superintendent, Touchard served as a kindergarten teacher for 15 years. *Id.*

Touchard learned of concerns with testing procedures at George County High School from a concerned parent. *Id.* at 3. According to her Amended Complaint, Touchard investigated and "discovered 'high performing' students were" required by "the High School administration, to take the required test[s] for some students" who did not perform as well on the tests. [18], pg. 3. Touchard submitted the evidence of alleged cheating to the School District. *Id.* Touchard argues that because of the School Board's refusal to act, she reported the cheating to the Mississippi Department of Education. *Id.*

Following this report, Touchard alleges that the School District made it "very clear [that her] actual Superintendent duties when performing the job did not include reporting misconduct amongst board members and teachers." [18], pg. 4. Touchard claims the "Board ensured that its disapproval of the reporting did not go unnoticed, for almost instantly the Board members began making numerous subliminal threats such as: 'when we find out who is telling the state everything we do, they will no longer work in this office.'" [22], pg. 2. In addition to subliminal threats, Touchard alleges that she received mail stating that "someone would release pictures of [her] and

a Mississippi Department of Education employee together in a parking lot at night." *Id*. at 3. Also, her car was vandalized allegedly because of her actions. *Id*. Touchard publicized these threats and investigation in the local newspaper. [22], pps. 3, 8. Touchard claims she "clearly established [that] the Board expressly knew" she was "reporting the misconduct." *Id*. at 10.

Touchard further alleges that the School District went so far as to use their "wide authority to keep [her] from attending high school activities that she would have been duty-bound to participate in concerning discipline, accounting, and monitoring of all daily activities." [18], pg. 5. The School District hired an assistant superintendent and certified public accountant to prevent Touchard from investigating and reporting the cheating scheme further. *Id*. at 4; [22], pg. 3. Upon hiring Touchard's successor, Touchard claims she "has been effectively banned from the premises. She has applied for employment within the district, on any basis, but has been denied." [18], pg. 5. At a hearing on the School District's Motion to Dismiss [19], Touchard stated that the School District refused to hire her even as a kindergarten teacher after her term of office concluded.

Touchard initiated this action against the School District on May 18, 2021, alleging unlawful retaliation under the First Amendment as well as state law claims. [1]. The School District filed its Motion to Dismiss [4] State Law Claims and Motion for More Definite Statement of Federal Claims [6]. The Court granted the School District's Motion, but allowed Touchard to file an Amended Complaint. [16]. Accordingly, Touchard filed an Amended Complaint [18] on December 12, 2021, again alleging a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. [18]. The School District once more requests the Court dismiss this action. [19].

## II. STANDARD OF REVIEW

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. The factual allegations must be "enough to raise a right to relief above the speculative level."

*Oceanic Expl. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). However, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst. Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1988)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted."

*IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).

### III. FIRST AMENDMENT RETALIATION

Touchard alleges that the School District violated her First Amendment rights by refusing to hire her as an employee after her term of office as Superintendent concluded. [18]. The School District contends that the speech of public officials, whether elected or not, is not protected when speaking pursuant to their official duties. [19]. Since Touchard's "speech" related to the cheating scheme was arguably made pursuant to Touchard's job as Superintendent, then the School District argues Touchard's lawsuit must be dismissed.[1] Touchard argues her report to the Mississippi Department of Education is protected, even if it was pursuant to her official duties, because she was acting against the School Board's demands. [22], pg. 8. The real issue is whether Touchard's speech as an *elected* official is protected by the First Amendment, regardless of whether the speech is made pursuant to official duties.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "Although it explicitly refers only to federal action, it applies to the states through the Due Process Clause of the Fourteenth Amendment." *Colson v. Graham*, 174 F.3d 498, 506 (5th Cir. 1999) (citing *De Jonge v. Oregon*, 299 U.S. 353, 364, 57 S. Ct. 255, 81 L. Ed. 278 (1937)). "[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson*, 174 F.3d at 508. "'[A]s a general matter,' the First Amendment prohibits

---

[1] The Fifth Circuit recently issued an opinion that demonstrates there is more nuance to the School District's legal argument of how "official duties" are defined than the School District suggests. *See Bevill v. Fletcher*, 26 F.4th 270, 275–279 (5th Cir. 2022). But it is unnecessary to reach that issue for the reasons set forth in this opinion.

government officials from subjecting individuals to 'retaliatory actions' *after the fact* for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, ---- U.S. ----, 142 S. Ct. 1253, 1259, ---- L. Ed. 2d ---- (2022) (emphasis added) (quoting *Nieves v. Bartlett*, ---- U.S. ----, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019); *see also Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves*, 139 S. Ct. at 1722. "A First Amendment retaliation claim requires that the defendant retaliated in response to some protected speech." *Wetherbe v. Smith*, 593 F. App'x 323, 327 (5th Cir. 2014).

"The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same." *Wilson*, 142 S. Ct. at 1261. Touchard is a former elected official who alleges retaliation for not being hired as an employee after her term of office as Superintendent concluded. [18], pg. 5.

The School District hinges its argument on the employee-speech doctrine, requesting that the Court apply the *Garcetti* framework to determine whether Touchard has a viable First Amendment claim. *Garcetti v. Ceballas*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Under *Garcetti*, "[w]hen public *employees* engage in speech pursuant to their official duties, they 'are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Harmon v. Dallas County, Texas*, 927 F.3d 884, 893 (5th Cir.2019) (emphasis added) (citing *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951). The

6

Supreme Court stated "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014).

Here, however, Touchard was serving as Superintendent—an *elected* public official at the time—when she allegedly acted upon her official duties to report the cheating scheme to the Mississippi Department of Education. After reporting the cheating scheme, the School District refused to hire Touchard "on any basis" after the conclusion of her term of office as Superintendent. [18], pg. 5. There are two underlying issues in this case: (1) whether an elected official's speech is protected by the First Amendment when made pursuant to her official duties; and (2) whether an elected official can be retaliated against for engaging in protected speech.

## A. Elected Official Speech

Touchard acknowledges she was potentially speaking within her official capacity when she reported the cheating scheme to the Mississippi Department of Education. If a public *employee* makes a statement "pursuant to [his or her] official duties" the speech is not protected under the First Amendment. *Bevill v. Fletcher*, 26 F.4th 270, 276 (5th Cir. 2022) (citing *Garcetti*, 547 U.S. at 421–22). Touchard was elected by the people at the time she spoke about the cheating scheme. She was not an employee.

The Supreme Court held in *Bond v. Floyd*, the speech of *elected* officials "should be uninhibited, robust, and wide-open." *Bond v. Floyd*, 385 U.S. 116, 135–36, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964)). It is an elected official's duty "to take positions on controversial political questions so that their constituents can be fully informed by them . . ." *Bond*, 385 U.S. at 136–37, 87 S. Ct.

339. Further, the Supreme Court has held that "statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964); *Wood v. Georgia*, 370 U.S. 375, 82 S. Ct. 1364, 8 L. Ed. 2d 569 (1962)). The Supreme Court did not revisit *Bond* when deciding *Garcetti. Garcetti*, 547 U.S. 410; *Bond*, 385 U.S. 116. Pre-*Garcetti*, the Fifth Circuit "granted relief to elected officials claiming First Amendment retaliation." *Scott v. Flowers*, 910 F.2d 201, 204–05, 212 (5th Cir. 1990) (holding the reprimand of public statements of an elected official was unconstitutional); *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir. 1986) (finding that elected members of a county board of education stated an actionable First Amendment retaliation claim when board members uncovered the conspiracy of a fraudulent recall petition scheme).

The question of whether *Garcetti* applies to the speech of elected officials has not been addressed by the Supreme Court. But, Fifth Circuit cases are instructive. *Jenevein v. Willing*, 493 F.3d 551 (5th Cir. 2007). In *Jenevein*, the Fifth Circuit held "the preferable course ought not draw directly upon the *Pickering–Garcetti* line of cases for sorting the free speech rights of employees elected to state office." *Jenevein*, 493 F.3d at 558 (citing *Pickering*, 391 U.S. 563, 88 S. Ct. 1731; *Garcetti*, 547 U.S. 410). Instead, "we turn to strict scrutiny of the government's regulation of the elected official's speech to [her] constituency, requiring such regulations to be narrowly tailored to address a compelling government interest . . ." *Id.*

The Fifth Circuit addressed this question again in an opinion that was subsequently vacated on rehearing *en banc* based on mootness grounds. *Rangra v. Brown*, 566 F.3d 515, 522 (5th Cir.

2009), *vacated on reh'g en banc*, 584 F.3d 206 (5th Cir. 2009). In *Rangra*, the Fifth Circuit initially held "[t]he First Amendment's protection of elected officials' speech is full, robust, and analogous to that afforded citizens in general." *Rangra*, 566 F.3d at 518, *vacated on other grounds en banc*, 584 F.3d 206. The Fifth Circuit recognized "when the state acts as a sovereign rather than as an employer, its power to limit First Amendment freedoms is much more attenuated." *Rangra*, 566 F.3d at 522–23, *vacated on reh'g en banc*, 584 F.3d 206 (5th Cir. 2009). The interest of the state in regulating speech "as a sovereign is 'relatively subordinate . . . [as] [t]he government cannot restrict the speech of the public at large just in the name of efficiency.'" *Rangra*, 566 F.3d at 518, *vacated on reh'g en banc*, 584 F.3d 206 (5th Cir. 2009) (citing *Waters v. Churchill*, 511 U.S. 661, 675, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994)).

Here, "[o]ur 'employee' [at the time of the alleged speech] is an *elected* official, about whom the public is obliged to inform itself, and the 'employer' is the public itself, at least in the practical sense, with the power to hire and fire." *See Jenevein*, 493 F.3d at 557 (emphasis added).

The School District never addresses this issue and concedes that Touchard is an elected official. The Fifth Circuit has not applied *Garcetti* to the speech of elected officials. Further, the School District made no distinction as to the speech of elected officials and presented no authority that requires dismissing First Amendment retaliation claims at the pleading stage simply because the speaker is an elected official speaking pursuant to her official duties. To the contrary, Touchard's claims must be allowed to proceed at this stage. *Bond*, 385 U.S. 116, 87 S. Ct. 339; *Rangra*, 566 F.3d at 526–27 (5th Cir. 2009), *vacated on reh'g en banc*, 584 F.3d 206 (5th Cir. 2009); *Jenevein*, 493 F.3d at 557.

**B. Retaliation Against an Elected Official**

Touchard alleges she was not hired on any basis after she made the report to the Mississippi Department of Education and her term of office concluded. [18]. It is undisputed that Touchard suffered an adverse employment action. [20], pg. 11. "Adverse employment actions are discharges, *refusals to hire*, refusals to promote, and reprimands." *Pierce v. Texas Dept. of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (emphasis added). "'[D]eprivations less harsh than dismissal' can sometimes qualify too." *Wilson*, 142 S. Ct. at 1260–61 (citing *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S. Ct. 2729, 2737, 222 L. Ed. 2d 52 (1990)). Touchard served 15 years as a kindergarten teacher prior to her election as Superintendent. [18], pg. 2. After her term concluded, Touchard has been denied employment with the School District on "any basis." [18], pg. 5; [22], pg. 10. Touchard's retaliation claim survives dismissal at this stage.

## IV. FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

Touchard does not refute the dismissal of the Fourteenth Amendment claim under the Equal Protection Clause. [21], pg. 2. The Court finds that the School District's motion to dismiss as to the Fourteenth Amendment is well taken and should be granted.

## V. CONCLUSION

**IT IS, THEREFORE ORDERED AND ADJUDGED** that Defendant George County School District's Motion to Dismiss [19] is GRANTED in part AND DENIED in part.

**SO ORDERED AND ADJUDGED**, this the 15th day of September 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE